IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FEDERAL INSURANCE
COMPANY

                          Plaintiff,

        v.                                          1:07-cv-0355-WSD

EUROPEAN AMERICAN
REALTY, LTD., et al.

                          Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Federal Insurance Company's

("Plaintiff" or "Federal") Motion for Preliminary and Permanent Injunctive Relief

and Discharge from Further Liability Pursuant to 28 U.S.C. §§ 1335 & 2361

("Interpleader Motion") [4] and the Defendant EAR Parties' Motion to Dismiss

[48].

## I.    FACTUAL BACKGROUND

Plaintiff brings this Interpleader action against multiple Defendants who it

claims have made competing and inconsistent demands and claims for

reimbursement and coverage under an insurance policy it issued ("the Policy").

Plaintiff issued the Policy to Defendant European American Realty, Ltd. ("EAR")

for the time period of August 11, 2005 to August 11, 2006.  The Policy provides

insurance to EAR and other insureds.  Plaintiff's limitation of liability under the

Policy ("Limit of Liability") is $3 million, and coverage under the Policy includes

the costs of defense incurred in defending any claim.  The Policy contains a

General Partner Liability Endorsement, which provides insurance for losses

incurred by certain general partners and others acting on behalf of various limited

partnerships.  These partners and partnerships are also named as Defendants in this

action.

Plaintiff brought this interpleader action as a result of litigation between two

groups–Defendants EAR, Scott K. Toberman ("Toberman"), and certain other

defendant entities (collectively, the "EAR Parties") and Defendants Harold

Gootrad, Jerome Engerman, Gerald Frishman, and other defendant entities[1]

(collectively "the GEF Parties").  The litigation between the EAR Parties and the

GEF Parties involves multiple lawsuits in several jurisdictions and largely consists

---

[1] Plaintiff has named almost 50 defendants in this action.  It would be confusing and inefficient to list them all here.  For simplicity, the parties have grouped most defendants into several categories and refer to them by their categories in their briefing.  These categories include the EAR Parties and the GEF Parties.

of disputes between the EAR Parties, the GEF Parties, and various real estate ventures.

In 2005, the EAR Parties and GEF Parties were opposing parties in lawsuits in the United States District Court for the Northern District of Illinois, and in the Superior Court of Cobb County, Georgia ("the Initial Lawsuits"). On January 26, 2006, the EAR Parties filed a declaratory judgment action against Plaintiff, requesting a determination that the Policy covered the defense costs EAR incurred in the Initial Lawsuits. Plaintiff answered the complaint, and on July 26, 2006, the EAR Parties and Plaintiff entered into a confidential Settlement Agreement resolving all claims in the declaratory judgment action. Pursuant to the Settlement Agreement, Plaintiff agreed to pay a certain portion of defense costs related to the Initial Lawsuits, subject to the terms of the Policy, including the $3 million Limit of Liability provision. Plaintiff states that it has paid to EAR $1,983,681.05 in defense costs, leaving $1,016,318.95 remaining under the Limit of Liability provision. The parties do not dispute that the Limit of Liability is $3 million or that Plaintiff has already paid out $1,983,681.05 under the Policy.

On January 10, 2007, Plaintiff received from the GEF Parties a claim for coverage ("the GEF Coverage Claim") under the same Policy for $649,139.05.

This claim comprises defense costs the GEF Parties incurred, and for which they claim entitlement to reimbursement under the Policy, in defending seven different actions brought by the EAR Parties in federal and state court in Georgia.  Although they are not affiliates of EAR, the GEF Parties claim they are entitled to benefits under the General Partner Liability Endorsement.

On January 11, 2007, Plaintiff also received a claim for coverage of an unspecified amount under the Policy from David Lang ("Lang"), a former executive vice-president of Defendant EAR.  Lang seeks reimbursement for defense costs in connection with a case brought against him by EAR and Toberman in the Superior Court of Fulton County.  Lang demanded that no further payment be made to the EAR Parties, stated that the Policy funds were being wasted, and informed Federal that he intended to "file an equitable action seeking subordination of Mr. Toberman's claims under the policy to those of Mr. Lang." (Lang Letter, attached as Ex. D to Compl.)

In October 2006, the law firm of Gaslowitz Frankel LLC ("Gaslowitz"), filed an action against Plaintiff in the Superior Court of Fulton County ("the Gaslowitz Action") seeking reimbursement from Federal under the Policy. Gaslowitz asserts its reimbursement claim under the Policy because it defended the

-4-

EAR Parties in the Initial Lawsuits and other actions.  Plaintiff answered the

complaint and deposited $176,878.61 into the registry of the court–the maximum

sum that Plaintiff claims it would be obligated to pay under its Settlement

Agreement with the EAR Parties related to the costs claimed by Gaslowitz.  The

Gaslowitz Action is still pending, and whether Gaslowitz is entitled to the funds

deposited with the court has not yet been determined.

      In November 2006, EAR and Toberman filed an amended complaint against

Defendant Houston Casualty Company ("Houston") in a federal action pending in

the Northern District of Georgia ("the Houston Action").  In the Houston Action,

they seek reimbursement of defense costs in the Initial Lawsuits under an insurance

policy issued by Houston.  In December 2006, Houston filed a motion to add

Federal to the Houston Action as an indispensable party.  That motion is still

pending.

## II.    PROCEDURAL BACKGROUND

      On February 9, 2007, Plaintiff filed this complaint for interpleader, and on

February 23, 2007, Plaintiff filed this motion seeking injunctive relief and

discharge from further liability.  (Compl. [1]; Interpleader Mot. [4].)  Plaintiff

brought this action because "[w]hile sufficient funds remain under the Policy to

pay current demands, Federal expects the Policy to be exhausted if litigation and related [d]efense [c]osts continue." (Interpleader Mot. at 10.) Federal argues that the claims Defendants have asserted against it for reimbursement under the Policy "have made it clear that the claims of conflicting parties and Insureds will soon exceed the amount remaining of the Policy Limit," and because it "faces multiple claims by adverse claimants to the same Policy," it is entitled to "require Defendants to interplead and settle their claims to the remaining Policy proceeds among themselves . . . ." (Id. at 10-11.) Plaintiff further argues that Defendants should be enjoined from prosecuting any claim for Policy proceeds against Federal, and Federal should be discharged "from any further liability related to the Policy and dismiss[ed] . . . from this action." (Id. at 11.)

Defendants Houston, the GEF Parties, Lang, Gaslowitz, and the EAR Parties responded to Plaintiff's Interpleader Motion. Defendants Houston, Lang, and the GEF Parties do not dispute that Federal has satisfied the jurisdictional requirements for interpleader and do not oppose Plaintiff's request for a preliminary injunction.[2]

---

[2] The GEF Parties and Lang also argue that because Federal includes the $176,878.61 it deposited into the court's registry in the Gaslowitz Action as part of the $1,993,681.05 in defense costs it already has paid out, it is premature to dismiss Plaintiff from liability in this action. They argue that because no judgment has been entered regarding Federal's liability in the Gaslowitz Action, and Federal may

(Houston Resp. [37], at 3-4; GEF Resp. [38], at 3-5; Lang Resp. [39], at 3.)

Houston, Lang, and the GEF Parties, however, object to a permanent injunction on

the basis that Plaintiff's request is premature.  They also argue that Federal should

not be discharged of liability at this time because "it may be that . . . Federal is

independently liable and . . . should remain in the proceeding to answer any claim .

. . which discovery may bring to light."  (Houston Resp., at 3-4; GEF Resp., at 7;

Lang Resp., at 5.)  They argue that, at most, Federal is entitled to a discharge from

liability only as to the $1,016,318.95 deposited in the Court's registry.[3]

The Ear Parties argue that this is an improper interpleader action because

"there are not conflicting claims under the [Policy], only the potential for multiple,

---

be deemed to have little or no liability in that case, the $176,878.61 deposited in
the Gaslowitz Action "cannot properly be characterized as defense costs already
paid by Federal in this case."  (GEF Resp., at 5; Lang Resp., at 5.)  Thus, they
argue that the amount should be considered as part of Federal's total potential
liability in this action. In Response, Federal disclaimed any right to or interest in
the funds, and placed the parties in the Gaslowitz Action on notice of this action.
(Reply [52], at 2.)

[3] Defendant Gaslowitz also does not challenge the propriety of an
interpleader action in this case.  Instead, it simply responds that while "injunctive
relief might be appropriate in this case at some stage, it would be premature for the
Court to enjoin [its] pre-existing litigation" in the Gaslowitz Action based only on
Federal's claims in the Complaint without conducting any discovery.  (Gaslowitz
Resp. [40], at 7.)

non-mutually exclusive claims under the [P]olicy."  (EAR Resp. [42], at 2.)  They argue that the Settlement Agreement requires Federal to pay a portion of the defense costs incurred by the EAR Parties in litigating certain underlying claims, and the contractual obligation is independent of Federal's obligation under the Policy.  (Id. at 3.)  On April 10, 2007, the EAR Parties also filed a Motion to Dismiss the Interpleader Complaint, asserting essentially the same arguments they make in opposition to Federal's Interpleader Motion.  (EAR Mot. to Dismiss [48].)

Since Federal filed this action, the EAR Parties have made further demands for reimbursement under the Policy.  In their Response, they claim that because Federal "intentionally" did not inform them of its plan to file this Complaint, they "continue[d] to make defense decisions" in reliance on the Settlement Agreement, and between January 1, 2007 and February 9, 2007, they incurred approximately $225,000 in attorney's fees and costs in litigation against the GEF Parties.  (EAR Resp., at 9.)  The EAR Parties also claim that Federal owes past-due bills in the amount of $230,000 under the terms of the Settlement Agreement.  (Id.)  Thus, the EAR Parties assert $455,000 more in claims for reimbursement, thus exceeding the available funds under the Limit of Liability in the Policy.

## III.   DISCUSSION

A.    Propriety of Interpleader

Interpleader "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding."  7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1704, at 540 (3d. ed. 2004); see also Rhoades v. Casey, 196 F.3d 592, 600 n.8 (5th Cir. 1999) ("The legislative purpose of an interpleader action is to remedy the problems posed by multiple claimants to a single fund, and to protect a stakeholder from the possibility of multiple claims on a single fund.").  The federal interpleader statute is "remedial and [should] be liberally construed."  State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 533 (1967); see also New York Life Ins. Co. v. Welch, 297 F.2d 787, 790 (D.C. Cir. 1961); 7 Wright & Miller, § 1704, at 541.

The jurisdictional requirements for filing an interpleader action are established in 28 U.S.C. § 1335.  The statute provides that the district courts shall have original jurisdiction of any interpleader action filed by any corporation having in its possession "money or property of the value of $500 or more, or having issued

a note, bond, certificate, policy of insurance, or other instrument of value or

amount $500 or more, . . . or being under any obligation . . . to [that] amount," if:

> (1)  Two or more adverse claimants, of diverse
> citizenship[4] . . . are claiming or may claim to be entitled
> to such money or property, or to any one or more of the
> benefits arising by virtue of any note, bond, certificate,
> policy or other instrument, or arising by virtue of any
> such obligation; and if (2) the plaintiff has deposited such
> money or property or has paid the amount of the loan or
> other value of such instrument or the amount due under
> such obligation into the registry of the court, there to
> abide the judgment of the court . . . .

28 U.S.C. § 1335(a)(1), (2).  District courts are authorized to grant injunctions in a

statutory interpleader action.  Pursuant to 28 U.S.C. § 2361, a district court may:

> issue its process for all claimants and enter its order
> restraining them from instituting or prosecuting any
> proceeding in any State or United States court affecting
> the property, instrument or obligation involved in the
> interpleader action until further order of the court. . . .
> Such district court shall hear and determine the case, and
> may discharge the plaintiff from further liability, make
> the injunction permanent, and make all appropriate orders
> to enforce its judgment.

28 U.S.C. § 2361.

---

[4]  The diversity requirement under the interpleader statute is satisfied if at least two adverse claimants are of diverse citizenship.  Tashire, 386 U.S. at 530.

In this case, Defendants do not challenge that the amount in controversy, $1,016,318.95, is well above the $500 requirement, two or more defendants of diverse citizenship have made adverse claims to the remaining Policy proceeds, and additional claims are likely to be asserted in the future.  Federal has deposited in the registry of the Court the amount of the remaining Policy proceeds.

The EAR Parties argue that this is an inappropriate case for interpleader because there are no conflicting claims under the Policy, only the potential for multiple, non-mutually exclusive claims.  They argue that Federal's liability to the EAR Parties is established under the Settlement Agreement, thus Federal's duties under the Settlement Agreement are independent of the Policy and do not conflict with any other claims which might be brought by other insureds.  The Court disagrees.

The Court first notes that "multiple and vexatious litigation" is not the statutory standard for interpleader.  Even so, Plaintiff has demonstrated that it is threatened with multiple litigations over the remaining funds available under the Policy.  According to its Complaint, Federal is facing multiple litigation, threats of litigation, and demands on the Policy from numerous parties, all claiming a right to

reimbursement for defense costs under the same Policy.  The Gaslowitz Action and the Houston Action are currently pending and have yet to be resolved.

As Plaintiff points out, the Settlement Agreement between Federal and the EAR Parties provides for an allocation of payment for certain defense costs, "subject to the Policy's terms and conditions."[5]  (Pl. Reply [53], at 6.)  The Settlement Agreement states that "subject to the terms and conditions of the Policy and this Agreement," Federal agreed to reimburse, on behalf of the EAR Parties, a portion of "reasonable and necessary Defense Costs, as that term is defined in the Policy, incurred by the EAR [Parties] . . . pursuant to the Policy terms that would apply as if each of the EAR [Parties] were covered."  (Id. at 6-7.)  Thus, the Settlement Agreement provides that Federal agreed to a percentage allocation of defense costs that would qualify for reimbursement under the Policy, as if those two underlying lawsuits were deemed to be covered claims under the Policy.[6]

---

[5]  Plaintiff states that it has provided a copy of the Settlement Agreement by filing it under seal, but apparently has failed to do so.  Because Defendants do not dispute Plaintiff's quotations from the Settlement Agreement in their briefs, the Court need not view a copy of the agreement at this time, and it is not dispositive of Plaintiff's Interpleader Motion.  Plaintiff must file a copy of the Settlement Agreement under seal within ten days of the entry of this Order.

[6]  The Settlement Agreement apparently does not preclude other claims by other insureds which may further reduce the available funds under the Policy.

Based upon the aggressive assertion of claims under the Policy, the litigiousness of Defendants in asserting their entitlement to reimbursement, and the rapid exhaustion of insurance coverage simply to pay defense costs, the limited funds remaining under the Policy will be the subject of conflicting, adverse claims in excess of the funds available.[7]  This strikes the Court as a classic example of a case where interpleader is appropriate.  The Settlement Agreement does not restrict or prohibit the possibility of other Insureds making claims under the same Policy and competing for the same funds.  Due to changes in ownership of the General Partners of some of the Limited Partnerships named in the General Partner Liability Endorsement in the Policy, some of the GEF Parties may fall under the Policy's definition of an insured party.  Thus, parties on both sides of multiple lawsuits have made claims as Insureds for defense costs under the Policy.  The claims by other Defendants to the amounts deposited with this Court are in

_____

[7] Even if all funds were not depleted by these conflicting claims, interpleader is still necessary in this case because each side appears to take the position that if Federal reimburses the other, it is doing so improperly and thus subjecting itself to further liability.  An interpleader action will allow the parties to litigate, and the Court to decide, who is entitled to defense costs under the Policy and the proper method for paying those costs, thus eliminating potential further claims against Federal for bad faith or improper administration of the funds.

competition with the claims of the EAR Parties,[8] and this interpleader action is an

appropriate method to determine the rights and obligations of the parties under the

Policy.[9]  The Court finds that the requirements for interpleader have been met.

      B.      <u>Injunction under 28 U.S.C. § 2361</u>

Federal seeks an injunction pursuant to 28 U.S.C. § 2361, requiring

Defendants to settle their rights to the Policy proceeds in this Court and enjoining

Defendants from "prosecuting any claim against Federal related to the Policy."

(Interpleader Mot., at 15.)  The Court notes initially that a permanent injunction

under § 2361 would be premature.  Section 2361 states that a court may enter an

order restraining the parties "from instituting or prosecuting any proceeding in any

---

[8] In fact, the EAR Parties' response to Plaintiff's Interpleader Motion further demonstrates the competing nature of the claims.  They assert that they are now owed approximately $455,000 in defense costs under the Policy.  Combined with the demands of the GEF Partes, the remaining limits of the Policy are exceeded.

[9] The EAR Parties also cursorily argue that Federal's Interpleader action is barred by the equitable doctrine of laches.  (EAR Resp., at 15.)  They claim that Federal delayed in bringing this action because "in October 2005, Federal took the position that some of the EAR [Parties] were policyholders under the Policy and Federal was aware that there were claims made against those entities."  They argue that even though Federal knew "there was at least a potential of additional claims," it "elected to move forward with its settlement" with the EAR Parties.  (<u>Id.</u> at 15-16.)  This argument is unconvincing.  The Court finds there is no evidence that Federal improperly delayed bringing this action.

State or United States court affecting the property, instrument or obligation involved in the interpleader action *until further order of the court*," and the court "shall hear and determine the case, and may discharge the plaintiff from further liability, *make the injunction permanent*, and make all appropriate orders to enforce its judgment."  28 U.S.C. § 2361.  Thus, the proper remedy at this time is a preliminary injunction until further order of the Court.  After the Court determines the rights of the parties under the Policy, it may elect to make the injunction permanent.

The parties also disagree regarding the extent of the injunction.  Federal asserts that the injunction should restrain any claim related to the Policy. Defendants argue that the injunction should only apply to claims against Federal related to the $1,016,318.95 of Policy proceeds Federal deposited in this Court's registry.  Section 2361 allows a court to enter an injunction preventing the parties "from instituting or prosecuting any proceeding in any State or United States court *affecting the property, instrument or obligation involved in the interpleader action.*"  28 U.S.C. § 2361.  Accordingly, all parties herein are restrained from continuing or bringing any action, in any court, concerning the right to and distribution of the Policy proceeds which are the subject of this interpleader action,

that is any claim asserted or which may be asserted for payment under or related to the terms and conditions of the Policy.[10]  See Companion Life Ins. Co. v. Schaffer, 442 F. Supp. 826, 829 (D.C. N.Y. 1977).

      C.    Discharge from Liability

      Plaintiff and Defendants also disagree regarding whether and to what extent Federal should be discharged from liability.  Federal requests an order discharging it "from any and all further liability arising out of or in any way relating to the Policy."  (Pl. Proposed Order at 3.)  Defendants argue that Federal's request is overly broad.  They argue that, at most, Federal is entitled to a discharge from liability as to the $1,016,318.95 deposited in the Court's registry, but that Federal may have other liability to Defendants and should remain in the proceeding to answer any claim that "discovery may bring to light."  For example, the GEF Parties argue that Federal may have liability to them with respect to the $1.9 million in Policy proceeds it had disbursed prior to depositing the remaining funds in the Court's registry.  (GEF Resp., at 7.)  The EAR Parties argue that a broad

---

     [10]  In their submissions, the parties have described the claims asserted under the Policy only as claims for the reimbursement of defense costs.  The Court understands that, as a practical matter, defense cost reimbursement claims may be the claims which exhaust the Policy limits.

release from liability would improperly discharge Federal from potential claims for bad faith or fraud in the inducement, or the release could be construed to apply to the Settlement Agreement.[11]  (EAR Resp., at 17.)

"It is a generally accepted principle that a disinterested stakeholder filing an action in interpleader may be dismissed from the case [and] discharged from further liability." Southtrust Bank, N.A. v. Wilson, 971 F. Supp. 539, 542 (M.D. Fla. 1997).  Plaintiff has already paid more than half its total liability under the Policy to one group of defendants.  Because the Court had no jurisdiction or oversight regarding payments made before this litigation was filed, it would be inappropriate to discharge Plaintiff from liability as to any payment paid previously.  The Court therefore holds that, at this time, Federal should be dismissed from this action and discharged of liability only as to the funds it has deposited with this Court and as to any claim asserted or which may be asserted against any of these deposited funds.[12]

_____

[11] The Court takes no position with regard to any claims that may be asserted against Federal not relating to the specific issue of entitlement to costs and reimbursements covered under the Policy.

[12] Because the Court finds that this is a proper action for interpleader, and Plaintiff's Interpleader Motion should be granted, the EAR Parties' Motion to Dismiss the Interpleader Complaint is **DENIED**.

III.   **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Federal's Motion for Preliminary and Permanent Injunctive Relief and Discharge from Further Liability Pursuant to 28 U.S.C. §§ 1335 & 2361 [4] is **GRANTED** pursuant to the terms of this Order and the Defendant EAR Parties' Motion to Dismiss [48] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants are required to interplead and settle among themselves their conflicting claims to the funds available under the Policy, which are deposited with this Court.  Defendants are restrained from continuing or bringing any action, in any court, concerning the right to and distribution of the funds which are the subject of this interpleader action.  Federal is hereby discharged from any and all further liability concerning the funds deposited with this Court's registry.  Federal is relieved of any further costs in connection with this action and is hereby dismissed from this action in accordance with the terms and limitations expressly set forth in this Order.

**SO ORDERED** this 2nd day of July, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE